IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Amias Turman, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
|     v. | ) | No. 26 C 7221 |
| | ) | |
| | ) | |
| American Auto Shield, LLC, | ) | |
| CarShield, and NRRM, LLC | ) | |
| d/b/a/ CarShield, | ) | |
| | ) | |
|     Defendants. | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiff Amias Turman purchased a vehicle service contract sold by defendant NRRM, LLC doing business as CarShield ("CarShield") and administered by defendant American Auto Shield, LLC ("AAS"). Defendants denied a claim for repairs under the contract which, Turman alleges, led to a car crash which injured him, and he sued for his damages. Before me is defendants' motion to stay and compel arbitration. I grant that motion.

1

**I.**

Turman bought a vehicle service contract ("VSC") from defendants in December 2024. A VSC is not exactly insurance, but instead a kind of extended warranty which, depending on the plan, covers some repairs.[1] Turman is proceeding *pro se*, and I read his filings generously.

Turman alleges that defendants denied a claim for repairs under his VSC, "which created circumstances that led to [him] being in a severe car accident." ECF 1-1 at 3 (edited for capitalization). This was a problem, aside from the obvious, because defendants' advertising, which used "celebrities and consumer endorsements," held out that repairs under the VSC would come quickly, and that the claims process would be "'simple' and 'peaceful.'" *Id.* (same). Instead, it seems, the claims process was neither simple nor peaceful, was not in line with defendants' apparent promises that "consumers [would not] get stuck with expensive car repair bills," and was not "in the spirit of [defendants'] contract agreement to cover repairs to [Turman's] vehicle." *Id.* (same). Turman has asked for close to three million

---

[1] "What is an extended warranty or vehicle service contract?" CFPB (Feb. 13, 2024), https://www.consumerfinance.gov/ask-cfpb/what-is-an-extended-warranty-or-vehicle-service-contract-en-729/.

dollars to compensate for the physical, emotional, and financial injuries resulting from this situation.

One could imagine several stumbling blocks, including proximate causation, on Turman's road to recovery. But defendants have interposed a preliminary matter, which is that the CSV at issue contains an arbitration provision. The provision begins with bold, all-caps, highlighted text:

> **ALTERNATIVE DISPUTE RESOLUTION AND CLASS ACTION WAIVER**
>
> **Please read this section carefully. It limits certain rights YOU have, including YOUR right to obtain relief or damages through court action, and waives YOUR right to initiate or participate in a class action.**

ECF 7-1 at 17. It continues, in relevant part (the contract defines AAS as the "obligor" or "administrator" and CarShield as the "seller"):

> If any legal dispute between YOU and either the ADMINISTRATOR, the OBLIGOR, or the SELLER (including any affiliated individual or entity) relating to this CONTRACT (including the sale or performance of this CONTRACT) (a "Dispute") is not resolved by the Claim Review Escalation process, YOU, ADMINISTRATOR, OBLIGOR, and/or SELLER may agree to participate in mediation of the Dispute as described below. If any Dispute is not resolved by the Claim Review Escalation process or mediation, **or if the parties forego those options, that dispute shall be resolved solely by arbitration** [before the Better Business Bureau of Denver, Colorado].

*Id.* at 6, 17–18 (emphasis added). Defendants have moved to compel arbitration under this provision.

3

## II.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), reflects an "emphatic federal policy in favor of arbitral dispute resolution" where an arbitration agreement exists. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citations omitted). Arbitration is a matter of contract, and the FAA's purpose is "to make arbitration agreements as enforceable as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citations omitted). "A party aggrieved by the alleged failure...of another to arbitrate" may petition a district court for a stay and an order compelling the other party to proceed in arbitration. 9 U.S.C. § 4. Courts compel arbitration if there is: (1) a written arbitration agreement; (2) a dispute within the scope of that agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Unless parties have delegated the above 'threshold' issues of arbitrability to the arbitrator, they are generally for the court to decide. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (citations omitted). But the Supreme Court has found that there are two kinds of challenges to the validity of an arbitration agreement, one of which will go to the arbitrator instead of the court, even without a delegation provision. "One type challenges specifically the validity" of the arbitration provision within a

4

contract, "and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* The former challenge will stay with the court; the latter goes to the arbitrator. *Id.*

**III.**

There seems to be no dispute that Turman's allegations constitute a dispute within the bounds of the arbitration provision, and it is clear that Turman would rather not arbitrate, so the parties' contentions focus on the validity of the arbitration agreement.

**A. Fraudulent Inducement**

Turman's first argument is that the defendants fraudulently induced his assent to the contract with deceptive advertising. This is a non-starter for two reasons. First, it is a challenge to the contract generally and not the arbitration provision specifically, which means that it must be decided by the arbitrator. *Rent-A-Center*, 561 U.S. at 69. Second, even if I were to address the merits, defendants are correct that plaintiffs generally cannot disclaim a contract and then also claim damages for breach of contract:

> Generally, a party bringing an action for fraud in the inducement must elect between two remedies...One

5

> alternative is to affirm the contract, retain the benefits, and seek damages...The other alternative is to rescind the contract, return any benefits received, and be returned to the status quo.

*Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 678 (7th Cir. 2007) (citations omitted). That is, Turman can either argue that the contract was fraudulently induced and ask for his money back, or he can argue that the contract was valid and seek his larger sum of damages as relief from the harm that defendants' breach has caused him.

### B. Unconscionability

Turman's second argument is that the arbitration provision is both procedurally and substantively unconscionable, which bears somewhat more analysis. The parties seem to agree—and they would be right—that Illinois contract law governs here. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Contract formation requires the mutual assent of the parties, and Illinois law approaches that question objectively. *Id.* In Illinois,

> Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power.
>
> Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor.

*Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 623 (Ill. 2006) (citations omitted).

6

> Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract.

> Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party.

*Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (citations omitted).

Turman contends that the arbitration agreement is procedurally unconscionable for two reasons. First, the contract was presented to him "on a 'take-it-or-leave-it' basis." ECF 9 at 3. In other words, the VSC was a contract of adhesion. But this argument does Turman no good because it goes to the entire contract, rather than the arbitration provision in particular, meaning that it must be addressed by the arbitrator, not the district court. *Rent-A-Center,* 561 U.S. at 69.

Turman's second assertion is that the "arbitration clause was obscured from view during the initial consumer exposure to the product via advertising." ECF 9 at 3. This is not enough. Virtually no provisions of any consumer contract are ever visible to the consumer during a commercial about the product, and Turman has made no allegations that the arbitration provision was hidden or otherwise buried in fine print. As I laid out above, the provision

is set off from the portion of the contract above it by the use of all caps, bold text, and highlighting. And as defendants point out, Turman had plenty of opportunity to review the terms of the contract before either rejecting the VSC or assenting to it. The original VSC Turman received allowed him to cancel within the first month of service for a full refund. ECF 11-2 at 26. And the Seventh Circuit has approved this kind of "simple approve-or-return device." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997).

Turman asserts that the arbitration provision is substantively unconscionable because "[f]orcing an individual consumer into a private, costly arbitration forum to address a systemic, public-facing fraudulent advertising campaign serves only to shield the Defendants from transparency and regulatory scrutiny. ECF 9 at 3. Turman may well be right, and this is probably why there historically existed "widespread judicial hostility" to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). But for better or worse, the Congress has settled the issue: "A written provision in any...contract...to settle by arbitration a controversy thereafter arising out of such contract...shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

**IV.**

Defendants' motion is granted. The case is stayed and Turman is compelled to pursue his grievances, if at all, through arbitration.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: August 7, 2026